IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 11, 2017

**DONALD DOUGLAS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 14-03522     J. Robert Carter, Jr., Judge**

_____

**No. W2017-00170-CCA-R3-PC**

_____

The Petitioner, Donald Douglas, filed a petition for post-conviction relief, alleging that he did not knowingly and voluntarily waive his right to a direct appeal in exchange for a sentence of eight years and that his trial counsel was ineffective. After a hearing, the post-conviction court denied the petition. On appeal, the Petitioner challenges the post-conviction court's ruling. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Josie S. Holland, Memphis, Tennessee, for the Appellant, Donald Douglas.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Carrie Bush, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In July 2014, the Petitioner was indicted for aggravated robbery and, following a jury trial in May 2015, he was convicted as charged. The transcript of the Petitioner's sentencing hearing reflects that the Petitioner's trial counsel announced that he and the State "recommend[ed] to the Court an eight[-]year sentence and in exchange for that [the Petitioner] has agreed to withdraw his – not file a Motion for New Trial and waive his right to appeal." The trial court instructed trial counsel that the Petitioner should execute

a written waiver also but agreed to "sign off on it for sure." The trial court asked the Petitioner, "[I]s that your agreement that the State is going to recommend the minimum on this and you're just going to go ahead and get it behind you; is that right?" The Petitioner responded, "Yes, I already did that with my attorney." The trial court advised the Petitioner "that there's not going to be any appeal. This is going to end it and you're just going to just knock this out [and] get it done; right?" The Petitioner replied, "Yes, sir." The same day, the Petitioner signed a document titled "Order Waiving Motion for New Trial and Appeal." The order provided that the Petitioner was "fully advised and has freely, voluntarily, intelligently and understandingly, without any threats or pressure of any kind or promise of gain of favor from any source, chosen and elected to waive his/her right to a Motion for New Trial and an Appeal in this cause."

Thereafter, the Petitioner filed a timely petition for post-conviction relief, alleging that trial counsel did not explain that the Petitioner was waiving his right to a direct appeal. An attorney was appointed to represent the Petitioner, and an amended petition was filed. In the amended petition, the Petitioner maintained that he was not "adequately informed" of his rights before accepting the sentencing agreement, which he referred to as a "guilty plea." He contended that trial counsel coerced him into accepting the sentencing agreement by telling him that his mother and sister begged him to accept the agreement.

At the post-conviction hearing, trial counsel testified that he had practiced law since 2001 and that his practice consisted primarily of criminal defense. He began representing the Petitioner in general sessions court. The Petitioner always proclaimed that he was innocent. The State offered a plea agreement providing for a sentence of 7.2 or 8 years at eighty-five percent. The Petitioner refused the plea offer, and the case proceeded to trial. The Petitioner was convicted of the charged offense, and his co-defendant was convicted of a lesser-included offense.

Trial counsel said that based on his experience, he thought the trial court would impose a sentence between eight to ten years. However, because the victim testified at trial that a child was present at the time of the robbery and that the Petitioner had pointed a gun at the child, trial counsel thought the trial court could have enhanced the Petitioner's sentence anywhere from nine years to the maximum sentence of twelve years. Trial counsel spoke with the prosecutor who told him that if the Petitioner would agree to forego his direct appeal, she would recommend the minimum sentence of eight years. Trial counsel recommended that the Petitioner accept the State's offer.

Trial counsel said that on the day of the sentencing hearing, the trial court agreed to accept the sentencing agreement but advised them to enter a written order indicating the Petitioner's waiver of his motion for new trial and direct appeal. Trial counsel said that the Petitioner signed the order.

When asked if a "plea colloquy" occurred, trial counsel responded, "Well there was no plea. It was just a recommended sentence and we accepted it." Trial counsel did not recall if he told the Petitioner that his girlfriend and sister were crying and begging him to accept the sentence.

Trial counsel said that the Petitioner was "a pretty smart guy" and "a good client" and that he had no reason to think the Petitioner did not understand what a direct appeal was. He said that he and the Petitioner had some scheduling problems but that they discussed the case and also discussed the sentencing agreement. Trial counsel noted that the Petitioner maintained his innocence and did not want to be incarcerated for something he did not do, but trial counsel advised him to accept the sentencing agreement after the conviction "in an effort to minimize any time he was going to be incarcerated."

Trial counsel recalled that he met with the Petitioner every time they went to court. Additionally, "[t]here were a number of appointments he had to reschedule and then that went awry." He specifically recalled meeting with the Petitioner for hours on Mother's Day prior to trial. Trial counsel said, "For whatever reason, I don't think we met enough but all those weren't my fault. I was willing to meet any time he set an appointment." He also met with the Petitioner's mother and spoke with her by telephone.

Trial counsel said that the only alibi witnesses he and the Petitioner discussed were the Petitioner's sister and mother. However, at the time of trial, the Petitioner's mother was in Oklahoma and "was either coming back or not coming back." Trial counsel said that while he and the Petitioner were in the courthouse hall on the day of trial, the Petitioner's family suggested other potential alibi witnesses, and trial counsel attempted to have those people come to court. Regardless, trial counsel put on the alibi defense through the Petitioner's sister, who "testified very well." Trial counsel thought the Petitioner had a chance to be acquitted. After the Petitioner was convicted, trial counsel thought the Petitioner did not have any viable issues for appeal, noting that he would not have recommended the Petitioner accept the sentencing agreement if he had thought the Petitioner had a chance of having his conviction reversed on direct appeal.

Trial counsel recalled that the Petitioner was connected to the crime because of a white Nissan, noting that one of the officers had testified either that he knew the Petitioner or knew that the Petitioner had a white Nissan. Trial counsel did not, however, think issuing a subpoena to the Department of Motor Vehicles to discover the number of white Nissans that were registered at the time would have made a difference in the outcome of the trial. Trial counsel said that the State's case had other problems, such as who made the 911 call, when the 911 call was made, inconsistencies in the victim's testimony, and the alibi evidence. Trial counsel "certainly thought it was enough to[,] at the very least[,] garner reasonable doubt."

On cross-examination, trial counsel said that he was hired by the Petitioner's mother and that he represented the Petitioner for a little over a year. Trial counsel said that other than the appointments the Petitioner missed because of scheduling conflicts, he and the Petitioner met as often as they could and talked at every court date.

Trial counsel said the Petitioner maintained that his sister and his mother were his alibi witnesses. Trial counsel learned of other alibi witnesses "at the last minute." Trial counsel said the Petitioner's sister was "a very credible witness" and "did such a wonderful job on the stand" that he decided no other witness needed to testify regarding the Petitioner's alibi defense. Trial counsel said that "the codefendant's alibi witness also did an incredible job and I just still don't see how there was no reasonable doubt in the case."

Trial counsel said he typically explains to all of his clients that his first priority is to ensure they do not go to jail, but if they are convicted, his second priority is to ensure they receive the shortest sentence possible. Trial counsel said that even though the Petitioner was convicted, he received the minimum sentence for the conviction. Trial counsel recalled that the Petitioner did not have any other felony convictions, but he did have prior misdemeanor convictions. Accordingly, trial counsel thought if the Petitioner had not accepted the sentencing agreement, he would have received a sentence of "nine to ten years based on the considerations and factors the Court must consider when sentencing somebody involving other criminal conduct that are not convictions." Therefore, trial counsel recommended that the Petitioner waive his right to direct appeal in exchange for the minimum sentence.

When asked if he pressured the Petitioner into accepting the sentencing agreement, trial counsel responded:

> Well pressure is – you tell – when you talk to your client sometimes, you emphasize how important it is you think that they do this, that, or the other. You know, I wouldn't characterize it as pressure but I would characterize it as plain, straight talk. Sometimes when you're making these recommendations to clients, it gets heated.

Trial counsel said that it was the Petitioner's decision whether to accept trial counsel's advice.

Trial counsel recalled that when he told the trial court the Petitioner intended to forego a sentencing hearing and accept the minimum sentence in exchange for waiving his direct appeal, the trial court interrupted trial counsel and said, "[W]e've got an order

for that." Trial counsel reviewed the order with the Petitioner, and the Petitioner signed the order.

Amber York testified that the Petitioner was her boyfriend and that she was in court the day he accepted the sentencing agreement. York estimated that two hours elapsed from the time the Petitioner entered the courtroom until the order was entered. York said that she was crying "hysterically" because the Petitioner told her that if he did not accept an eight-year sentence, "he was going to get up to 13." The Petitioner did not want to accept the minimum sentence, but York recommended that he do so.

On cross-examination, York acknowledged that she did not talk to the Petitioner but that she told trial counsel to tell the Petitioner "that we was out here crying and we would like for him to just accept it."

The Petitioner testified that he had little time to meet with trial counsel to prepare for trial because he had to work in order to pay trial counsel's fees. The Petitioner said that he told trial counsel about four potential witnesses but that trial counsel did not subpoena those individuals. The Petitioner said that trial counsel did not prepare him for trial; instead, trial counsel merely told the Petitioner that he knew the Petitioner was innocent and that he would ensure the jury did not convict the Petitioner. Trial counsel did not make any of the objections the Petitioner suggested. Trial counsel advised the Petitioner that he did not need to testify because the Petitioner's sister was a credible witness who would testify about the Petitioner's alibi. The Petitioner was surprised when he was convicted.

The Petitioner said that on the day of his sentencing hearing, trial counsel "pulled [him] out [of] the court tank." The Petitioner stated:

> I was telling him I wasn't fixing to let them sentence me so I can come back on my direct appeal. He was, like, if you let them sentence you, this judge [is] sometimes usually a[n] A-hole and if you let him sentence you he's going to give you the maximum. The prosecutor is going to use the enhancement factor on you. So I was, like, he was, like, your mom and your wife is out there crying. They're begging you to get you to just sign for this time and the time I have you for you is eight years so you can go ahead and get this over with and you can come home. And at this point, you know, I took it. I didn't know that I was waiving my right to my direct appeal though. I didn't understand that. It wasn't on paper or nothing. It was, like, they had [an] eight-year deal for me and that would be that. I ain't know I was waiving my right to

come back on direct. That was my whole purpose of coming to trial because I wanted to go back and fight it again if I had lost like I lost. And I didn't know I was giving in, you know, saying that I did it and I didn't do it.

The Petitioner said that approximately one week after sentencing, trial counsel visited with him. Trial counsel told the Petitioner that he had interviewed one of the jurors and learned that they convicted the Petitioner because they thought the victim would not lie "because he was mentally challenged." The Petitioner responded, "[W]hy didn't you tell me that and I could have addressed that to the judge. I didn't know." The Petitioner said that although he had previous misdemeanor convictions, he was "naive to knowing about the system and how it work. I didn't know. I was just taking his advice because I paid him to represent me."

On cross-examination, the Petitioner said that he met with trial counsel only to pay him, and on each occasion, trial counsel said that he would "get back with" the Petitioner at a later date. The Petitioner denied that he and trial counsel ever discussed trial strategy. When asked who was responsible for the scheduling conflicts, the Petitioner responded, "I would say 50/50. Some on me, some on him. Because he had other cases he was representing people on and I was working ten to 12 hours a day trying to pay him in the warehouse." The Petitioner acknowledged that he gave trial counsel the names of four witnesses and that he and trial counsel discussed the witnesses. During trial, the Petitioner asked trial counsel to make objections, but trial counsel informed the Petitioner that the objections would be irrelevant.

The Petitioner understood that by agreeing to the minimum sentence of eight years, "then they wouldn't use enhancement factors." Trial counsel told the Petitioner that his "wife" and mother were crying and that he should not make them suffer. The Petitioner did not think the State was giving up anything to obtain the sentencing agreement. He thought the State was "just being nice" by offering the minimum sentence because he had only misdemeanor convictions. The Petitioner said that trial counsel told him that the child's presence during the crimes would "hurt" him. The Petitioner said that he did not know it was his decision whether to testify at trial. He acknowledged that he told the trial court he did not want to testify but maintained that he lied to the trial court.

On redirect examination, the Petitioner said he thought he could receive post-conviction relief in the form of resentencing. The post-conviction court said, "Well let me ask you, how does that make any sense? You got the minimum. The only [way] it could go is up. And you didn't come down here asking me to give you 12 years, did you?" The Petitioner responded, "No, sir." The post-conviction court said that it did not

have jurisdiction to grant a delayed appeal and could only grant relief in the form of a new trial. The Petitioner asserted that he wanted a new trial.

The post-conviction court read the portion of the sentencing transcript in which the trial court advised the Petitioner that the State was recommending the Petitioner receive the minimum sentence and that "there's not going to be any appeal." The post-conviction court then asked if the Petitioner recalled the proceedings. The Petitioner responded, "Part, yes, sir, part. I was saying I was ready to get it over with and go on to my family."

After the hearing, the post-conviction court issued an order denying post-conviction relief, finding that the Petitioner failed to prove that he did not knowingly and voluntarily waive his right to a direct appeal. On appeal, the Petitioner challenges the post-conviction court's ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the

petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). "[A]s pertinent to this case, [the] petitioner must establish that he would not have waived his right to appeal but for counsel's deficient performance." Carter v. State, 102 S.W.3d 113, 115 (Tenn. Crim. App. 2002).

On appeal, the Petitioner maintains that the post-conviction court erred by holding that he knowingly and voluntarily waived his right to a direct appeal. The Petitioner, citing Boykin v. Alabama, 395 U.S. 238, 243 (1969), Tennessee Rule of Criminal Procedure 11(b), and State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), complains that the trial court inadequately advised him of the rights he was waiving by entering a "guilty plea." The Petitioner further complains that trial counsel coerced him into "plead[ing] guilty" by advising him incorrectly that the State could enhance his sentence based upon the presence of the child during the crime. In response, the State argues that the Petitioner did not plead guilty but was convicted by a jury and later entered into a sentencing agreement with the State. The State contends that trial counsel correctly advised the Petitioner that his sentence could be enhanced above the minimum if he proceeded to a sentencing hearing. The State further contends that the Petitioner was advised of the rights he was waiving by accepting the sentencing agreement, and he knowingly and voluntarily entered into the agreement. We agree with the State.

Initially, we note that the Petitioner complains that the trial court failed to "properly advise" him of the rights he was relinquishing by pleading guilty. When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). A guilty plea "is itself a conviction." Id. at 242. In the instant case, the Petitioner was convicted by a jury. Therefore, the Petitioner's sentencing agreement was not a "guilty plea."

As a condition of the sentencing agreement, the Petitioner waived his right to a direct appeal. "In Tennessee, a criminal defendant has the right to one level of appellate

- 8 -

review." Serrano v. State, 133 S.W.3d 599, 604 (Tenn. 2004) (citing Tenn. R. App. P. 3(b) (2003); Collins v. State, 670 S.W.2d 219, 221 (Tenn. 1984)). "The law, however, 'does not require an appeal of a conviction in a criminal case in the event the defendant, for reasons satisfactory to himself, desires not to have such an appeal.'" Id. (quoting Collins, 670 S.W.2d at 221). Accordingly, a defendant may waive his right to appeal. Id. As a protection of a defendant's rights, Tennessee Rule of Criminal Procedure 37(d) requires that when a defendant chooses to waive the right to a direct appeal, counsel for the defendant shall file a written waiver of appeal, signed by the defendant, with the clerk during the time within which the notice of appeal could have been filed. Id. "'Such waiver of the right of appeal shall clearly reflect that the defendant was aware of the right and voluntarily waived it.'" Id. (quoting Tenn. R. Crim. P. 37(d)); see also Carter, 102 S.W.3d at 119.

In the order denying the petition, the post-conviction court stated, "[The Petitioner] states that he did not know he was waiving his appeal. The record demonstrates that he was asked about this in open court and agreed to it." The record does not preponderate against this finding.

Further, the Petitioner complains that trial counsel incorrectly advised him that the State would enhance his sentence based upon the Petitioner's pointing a gun at a child during the crime. In support of this contention, the Petitioner cites Tennessee Code Annotated section 40-35-114(3), which provides that a defendant's sentence may be enhanced if the offense involved more than one victim. The Petitioner argues, and the State agrees, that this enhancement factor cannot be used to enhance the sentence "for any one offense . . . committed against a specific, named victim." State v. Imfeld, 70 S.W.3d 698, 706 (Tenn. 2002). However, we note that trial counsel never testified he told the Petitioner that his sentence would be enhanced by the application of enhancement factor (3). Instead, trial counsel said that he generally feared that the trial court would enhance the Petitioner's sentence based upon the fact that a child was threatened. The State notes the trial court could have applied enhancement factor (10), that the defendant had no hesitation about committing a crime when the risk to human life was high. State v. Reid, 91 S.W.3d 247, 312 (Tenn. 2002) (stating that although enhancement factor (10) is inherent in the offense of aggravated robbery, it may be applied "where the defendant creates a high risk to the life of a person other than the named victim"). Trial counsel also contended that the Petitioner's sentence could have been enhanced based upon the Petitioner's prior misdemeanor convictions. Tenn. Code Ann. § 40-35-114(1). Therefore, trial counsel's advice regarding the potential for the Petitioner's sentence to be enhanced was not erroneous. In sum, we conclude that the post-conviction court did not err by concluding that trial counsel was not ineffective.

Finally, the Petitioner contends that the post-conviction court erred in determining that a new trial was the only relief that could be granted to the Petitioner. However,

because the post-conviction court correctly held the Petitioner knowingly and voluntarily agreed to accept the recommended sentence and waive his direct appeal, was not entitled to post-conviction relief, we conclude that this issue is moot.

### III.  Conclusion

In sum, we conclude that the Petitioner knowingly and voluntarily waived his right to a direct appeal and that he failed to prove his trial counsel was ineffective. Accordingly, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE